*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
:
:
KATHERINE PALADINO,                :
:
                    Plaintiff,      :         Civil Action No. 18-15459 (FLW)
:
     v.                            :
:                    OPINION
:
ANDREW SAUL,                       :
Commissioner of Social Security,   :
:
                    Defendant.      :
_____:

**WOLFSON, Chief Judge:**

      Katherine Paladino ("Paladino" or "Plaintiff") appeals from the final decision of the Commissioner of Social Security, Andrew Saul ("Defendant") denying Plaintiff disability benefits under Title II and Title XVI of the Social Security Act (the "Act"). After reviewing the administrative record, this Court finds that remand is required for the Administrative Law Judge ("ALJ") to assess Plaintiff's obesity in combination with her other impairments at step three of the sequential analysis.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      Plaintiff was born on November 29, 1961, making her 53 years old on her disability onset date. AR 73. Plaintiff has a 10th grade education and has past relevant work experience as a telephone sales representative. AR 21, 230. Plaintiff seeks disability benefits due to depression, borderline personality disorder, anxiety disorder, uterine fibroids, and obesity. AR 15.

1

Plaintiff protectively filed an application for Social Security Benefits on February 24, 2014, alleging an onset date of January 15, 2009. AR 76. The claim was denied on November 10, 2014. AR 86. Plaintiff filed a Request for Reconsideration, which was denied again on April 24, 2015. AR 100. After being granted a hearing before an ALJ, Plaintiff appeared before the Honorable Douglass Alvarado on March 21, 2017. AR 29. On July 21, 2017, the ALJ issued an unfavorable decision. AR 9. Thereafter, Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council, which was denied on August 27, 2018. AR 1.

In the present appeal, Plaintiff argues that the ALJ erred by 1) failing to assign limitations due to the Plaintiff's obesity, despite finding the condition to be a "severe" impairment, 2) assigning improper weight to the opinion of Plaintiff's treating physician, and 3) failing to include an off-task limitation in Plaintiff's RFC, despite evidence of such a limitation from Plaintiff's treating physician.

**A. Medical Evidence**

Plaintiff has a history of major depressive disorder, generalized anxiety disorder, histrionic personality disorder, borderline personality disorder, and obesity, AR 313, 320, 328, 336, 344, 423, as well as symptoms such as anxiety and depressed mood, AR 311, 318, 326, 331, 334, 342, 350, 355, 373, 378, 383, 388, 423, 495, 499, 554, 555; and pressured and excessive speech, AR 311, 318, 326, 334, 348-49, 350, 373, 378, 383, 388. Plaintiff has been prescribed varying medications such as Ativan; Imipramine; Wellbutrin; Celexa; Seroquel; Diazepam; and Zolpidem. AR 310, 317, 324-25, 332-33, 340-41, 357, 372, 377, 382, 387; 392, 421, 428, 447. Plaintiff reported issues sleeping throughout her treatment. AR 331, 391, 401, 404, 406, 420, 423, 427, 465, 504, 519, 521, 557. Plaintiff was noted to be "emotional" and cries easily, AR 406, 420, and has documented anger issues. AR 465. Additionally, Plaintiff's body mass index ("BMI") was

noted at 37.41 in August 2013; 37.03 in October 2013; 47.04 in April 2014; 45.91 in May 2014; 43.45 in May 2016. AR 311, 325, 333, 372, 454.

In August 2014, Plaintiff underwent a mental health consultative examination with Dr. Charles Hasson, Ph.D. AR 363. During the examination, Plaintiff reported severe insomnia, stating that she stays awake for days at a time and experiences night terrors. AR 363. Plaintiff has a long-reported history of psychiatric treatment, beginning at age 12. AR 363-64. Plaintiff also stated that she does not "handle stress well" and has "poor concentration and focus." AR 364. However, she was able to take care of her personal needs, feed her cats, go out for walks, keep her apartment clean, and cook for herself. AR 364-365. She was able to take public transportation, and had a driver's license and a car. AR 365. She watched TV shows on PBS. AR 365-366. She volunteered for an animal rights group and said she was able to get along with other people. AR 365-366. Dr. Hasson observed Plaintiff to have a "histrionic and overly dramatic style," which resulted in her crying several times throughout the exam. AR 365. He noted that her short-term memory and ability to concentrate were variable. AR 365. She was unable to perform Serial 3s and was unable to do some simple mathematical calculations. AR 366. Dr. Hasson ultimately diagnosed Plaintiff with "a mixed character disorder compounded by an Unspecified Mood Disorder." AR 366.

Plaintiff's treating physician, Dr. Kenneth Jungblut, completed a Medical Source Statement for Plaintiff on July 2015. AR 413. He stated he had been treating Plaintiff since July 2010, and diagnosed Plaintiff with Major Depressive Disorder, Recurrent, Severe; Borderline Histrionic Personality Disorder; and obesity. AR 413. Dr. Jungblut noted that Plaintiff's medications and their side effects would significantly limit her effectiveness at work duties. AR 413. He checked a number of boxes on the form, indicating that Plaintiff would be unable to maintain regular attendance; complete a normal day or workweek without interruptions for

3

psychological symptoms; or perform at a consistent pace without an unreasonable number and length of rest periods. AR 415. He also checked a box representing that Plaintiff would be "off task" 25% or more of the workday and would miss four or more days of work per month due to her symptoms. AR 417-18.

In general, Dr. Jungblut's reports through the summer of 2016, indicate that the Plaintiff frequently reported improvement in her symptoms with treatment. AR 371-410. To that end, in May and June of 2014, Plaintiff reported being less depressed, and she was sleeping better, but was feeling more anxious. AR 374. In July of 2014, she said she was much less depressed and in August, said her mood was better. AR 381, 386. In October of 2014, she reported sleeping five hours a night, but not well. AR 391. Her mental status exam was noted to be stable. AR 391. Although the severity of Plaintiff's mental health appeared to wax and wane over the next year, by December 17, 2015, Dr. Jungblut noted that Plaintiff was "less depressed than at past visits," with a better mood. AR 434. According to Dr. Jungblut, Plaintiff reported that her anxiety level was better, and she was "sleeping good." AR 434. Dr. Jungblut noted very similar findings with respect to Plaintiff's mental status at her remaining visits on February 2, 2016, and March 22, 2016, May 20, 2016, and August 4, 2016. AR 440, 446, 452, 459. Dr. Jungblut also consistently assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 60, indicating moderate symptoms. AR 19, 561.

In February 2016, Plaintiff was brought to the emergency room, after calling 911 requesting an evaluation and mentioning that she had broken things inside her house and was contemplating ending her life. AR 582. She was held overnight for observation and discharged after she became stable. AR 588. After being admitted to the emergency room, in March 2016, complaining of abdominal pain, nausea and vomiting, Plaintiff was diagnosed with gallstones.

4

AR 590. She underwent a cholecystectomy, and was discharged to her home after the outpatient procedure. AR 590. In July 2016, Plaintiff returned to the emergency room, stating that she felt left sided pain from her toes to her head, as well as numbness and tingling. AR 575. Plaintiff was diagnosed with chest pain and discharged. AR 580. In November 2016, Plaintiff checked into the Community Medical Center emergency department after falling off a bike and hitting her head. AR 563. Plaintiff reported a severe headache. AR 570. She was discharged after a CT scan of her brain and spine. AR 567.

### B. Plaintiff's Testimony Before ALJ

Plaintiff appeared before the ALJ at the hearing in March of 2017. Plaintiff testified that she did not graduate from high school, and the last grade she completed was ninth grade. AR 37. Plaintiff has a driver's license and drove to the hearing, but she usually rides the bus for transportation or relies on neighbors. AR 37-38. At the time of the hearing, Plaintiff was 5'2" tall and weighed 270 pounds. AR 39. She currently lives alone. AR 39. Plaintiff held several jobs during the relevant period, mostly in the field of telesales. AR 39-44.

Beginning in 2009, Plaintiff attended treatment three times a month to see a therapist and meet with a doctor for medication management. AR 46. She received diagnoses for several mental conditions. AR 46. Plaintiff testified that her borderline personality disorder causes her to have difficulties interacting with other people. AR 49. Plaintiff also testified that her depression has physically caused her ulcers and colitis, and she also feels "sorrow" and "shame." AR 50. At times when she was working, she would be sent home early because her employer noted her depression symptoms. AR 50. Plaintiff stated that she "kept getting fired" for anger issues, focus issues, and difficulty completing assigned tasks. AR 51. She also explained that she suffers from insomnia and night terrors, and even with the medication, she only sleeps 2-3 hours a night. AR 55-56. Plaintiff was also diagnosed with cocaine abuse dependency during her treatment, but she

5

testified the last time she used cocaine was at least 20 years ago. AR 49. She stated that any notes related to more recent use were inaccurate. AR 49.

Regarding her activities of daily living, Plaintiff testified that the only meals she prepares now are microwaveable or cereal. AR 52. When reading, she must reread words or sentences repeatedly and often loses interest. AR 51-52. On a normal day she wakes up around five, has coffee and a cigarette and watches the news. AR 60. Sometimes she will do some "personal care," but not often. AR 60. Plaintiff stated that she spends most of her day looking out her window, resting, or laying in bed and watching television. AR 62.

### C. ALJ's Decision

ALJ Alvarado issued his decision on July 21, 2017. AR 15-29. At step two, he concluded that Plaintiff had the severe medically determinable impairments of depression, personality disorder, anxiety disorder and obesity. AR 14. At step three, he found that Plaintiff's impairments did not meet or equal one of the listed impairments. AR 15. At step four, the ALJ found that Plaintiff had the RFC to perform work at all exertional levels, with limitations designed to address her physical and mental symptoms. AR 16-21. With the assistance of the testimony of the VE, the ALJ concluded that Plaintiff could not perform her past relevant work. AR 21. At step five, and again in consultation with the VE, the ALJ determined that Plaintiff retained the RFC to perform the following jobs that exist in significant numbers in the national economy: 1) small products assembler, 2) presser, and 3) packing line worker. Therefore, the ALJ found that Plaintiff was not disabled from January 15, 2009 through the date of his decision. AR 23.

## II. **STANDARD OF REVIEW**

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of

the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §

404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

### III. DISCUSSION

In the present appeal, Plaintiff contests the ALJ's decision on three grounds. While two of Plaintiff's arguments, which challenge aspects of the ALJ's treatment of evidence from Plaintiff's treating physician, do not provide grounds for remand, one argument has merit. Indeed, by failing to sufficiently consider Plaintiff's obesity in combination with Plaintiff's other impairments, the ALJ committed error, and the case must be remanded so the ALJ can analyze the combined effects of these impairments.

**A.  Consideration of Plaintiff's Obesity**

Plaintiff first contends that the ALJ erred by failing to sufficiently consider Plaintiff's obesity, a severe impairment, at step three and subsequent steps.

In step three, the ALJ was required to determine whether any of a claimant's impairments, alone or in combination with other impairments, meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (a "listed impairment").  If a claimant is found to have a listed impairment or its equivalent, then she is considered disabled and the inquiry ends. *See Plummer,* 186 F.3d at 428. Obesity was removed as a "listed impairment" in 1999, but, as the Third Circuit has recognized, "this did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.,* 577 F.3d 500, 503 (3d Cir.2009) (citing SSR 00–3p, 65 Fed.Reg. 31039, 31040–42 (May 15, 2000)). To the contrary, "the Commissioner promulgated [Social Security Ruling] 00–3p, indicating how obesity is to be considered. This SSR replaced an automatic designation of obesity as a Listed Impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant." *Id.*; *see also Webster v. Astrue,* 628 F.Supp.2d 1028, 1031 (S.D.Iowa 2009) (explaining "This SSR points out that obesity is a life long impairment, and that although the obesity listing was deleted, the impairment requires special consideration in the evaluation of a disability claim," and, on

remand, directing "both the ALJ and counsel ... to read this ruling carefully, and then apply it to the facts of Plaintiff's case"). SSR 00–3p instructed that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, *including mental disorders*." (emphasis added).

In 2002, SSR 00–3p was superseded by SSR 02–1p, 67 Fed.Reg. 57859–02 (Sept. 12, 2002), but SSR 02–1p did not materially amend SSR 00–3p. *See Diaz,* 577 F.3d at 503.

SSR 02–1p provides the following guidance:

[W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. They also instruct adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.
….

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing.... For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," ... satisfies the criteria in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function.... We may also find that obesity, by itself, is medically equivalent to a listed impairment.... We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

Social Security Ruling, SSR 02–1p; Titles II and XVI: Evaluation of Obesity, 67 FR 57859–02.

In *Diaz,* the Third Circuit, citing SSR 02–1p, confirmed that "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz,* 577 F.3d at 503. There, the ALJ had determined, at step two, that the Plaintiff had various physical and mental severe impairments, including obesity, but then failed to consider the impact of Plaintiff's obesity, in combination with the plaintiff's other impairments. *Id.* at 504. The Third Circuit vacated and remanded the District Court's decision, noting that that "the ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, Diaz's obesity, in combination with her [other impairments], impacted her workplace performance." *Id.* at 505.

Here, as in *Diaz*, the ALJ identified Plaintiff's obesity as a severe impairment at step two, but failed to mention the condition at all at step three and only cursorily referenced it a step four. This is clear error. *See, e.g.*, *Moore v. Comm'r of Soc. Sec*., No. 11-05369, 2013 WL 941558, at *3 (D.N.J. Mar. 8, 2013) ("Despite the clear directives of SSR 02–1p and the Third Circuit, and despite the ALJ's own determination that Ms. Moore's morbid obesity is a 'severe impairment,' the ALJ does not mention, let alone discuss, whether Ms. Moore's obesity, alone or in combination with her other impairments, meets or equals one of the listed impairments at step three of his analysis, as he was required to do."); *Padilla v. Astrue*, No. 10-4968, 2011 WL 6303248, at *7 (D.N.J. Dec. 15, 2011) (remanding based on ALJ's failure to discuss Plaintiff's severe obesity because "the Court cannot determine whether the ALJ meaningfully considered the combined effect of Claimant's obesity with…the listed severe impairments").

Nevertheless, the Commissioner argues that the ALJ was not required to undertake the analysis mandated by SSR 02-1p and *Diaz*, because the record contains no evidence of

"functional limitations" related to Plaintiff's obesity and, even if the ALJ erred, any error was harmless. However, whatever record evidence regarding Plaintiff's obesity, *Diaz* is clear that "meaningful[ ]" discussion of severe obesity "individually and in combination with her impairments," *is mandatory* "at step three and at every subsequent step." *Diaz*, 577 F.3d at 503. Were the record unambiguous that Plaintiff's obesity did not, in combination with Plaintiff's other impairments, meet or equal a listing, then this error may have been harmless. But, the record is not as clear as the Government suggests given that Plaintiff was diagnosed as "morbidly obese" and suffers from well-documented depression. As SSR 02-1p explicitly notes, obesity "may…cause or contribute to mental impairments such as depression," and, in that regard, "[t]he effects of obesity may be subtle." Without any discussion of the effects of Plaintiff's obesity combined with Plaintiff's other impairments, including her depression, "the Court cannot determine whether the combined effect of Claimant's impairments would be medically equivalent to a[ ]…listing." *Padilla*, No. 2011 WL 6303248, at *7. Thus, on remand, the ALJ must conduct that required analysis of Plaintiff's obesity combined with her other impairments at step three, and at subsequent steps.[1]

### B. Medical Opinion Testimony

While the ALJ erred by failing to sufficiently consider Plaintiff's obesity, Plaintiff's remaining arguments are not grounds for remand. Plaintiff contends that the ALJ erred by not according the proper weight to Plaintiff's treating physician, Dr. Jungblut, and, specifically, for not sufficiently explaining why the ALJ did not include an off-task limitation in Plaintiff's RFC, despite Dr. Jungblut's assessment that Plaintiff would be off-task for 25% of the day.

---

[1] Of course, if the ALJ finds that Plaintiff's obesity combined with other impairments meet or equal a listing at step three, then further analysis is unnecessary. If not, however, then the ALJ must provide more analysis of Plaintiff's obesity at step four than he did in his previous decision.

13

It is well established that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c).) Furthermore, while an ALJ must consider the opinions of treating physicians, "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ" where it is not well supported or there is contradictory evidence. *Chandler*, 667 F.3d at 361 (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)).

Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Several factors may also be used to determine the weight given to a medical opinion including: the length of the treatment relationship; the nature and extent of the treatment relationship; supportability by the medical evidence; and consistency with the record as a whole. *Id.* If a treating source's opinion conflicts with that of other medical sources, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). That is, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, rather than "credibility judgments, speculation or lay opinion." *Id.* An ALJ is required to provide "an explanation of the reasoning behind [his] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d. Cir. 2001).

In the present matter, the ALJ did all that he was required in evaluating Dr. Jungblut's opinions, articulating specific reasons for discounting them that were supported by substantial record evidence:

> [Dr. Jungblut's opinion] is not supported by treatment records to the extent set forth in this opinion. Nor is it consistent with the GAF score ascribed to the claimant by Dr. Jungblut. The doctor noted moderate symptoms and moderate problems, and found intact cognitive functioning. Many of the checked off symptoms and findings on the form were never mentioned at follow-ups, or were specifically denied. The assessment is also inconsistent with the claimant's fairly consistent reports of improvement. Accordingly, the assessment is given partial weight.

AR 21. Indeed, the ALJ was correct that Dr. Jungblut's report generally demonstrated moderate symptoms. Plaintiff's mental status exam was noted to be stable through much of 2015 and 2016, and in August of 2016, Plaintiff was "less depressed than at past visits," with a better mood. AR 459. Plaintiff also noted that her anxiety level was better, and she was "sleeping good." AR 459. Plaintiff is also incorrect that the ALJ did not sufficiently explain his reasons for not including an off-task assessment in Plaintiff's RFC. In that regard, Dr. Jungblut merely checked off a box on a single form, without any explanation, indicating that Plaintiff would be off task 25% of the day. As the ALJ explained, he rejected such evidence where it was inconsistent with the record as a whole, noting that "many of the checked off symptoms and findings on the form were never mentioned at follow-ups." AR 21. Indeed, besides this one tick on the form, Plaintiff does not point to any other evidence regarding Plaintiff's supposed off-task limitations that the ALJ overlooked. The ALJ's justification for excluding an off-task limitation in the RFC was supported by substantial evidence.[2]

## IV. CONCLUSION

---

[2] Plaintiff also argues that the ALJ accorded too much weight to the GAF scores that Dr. Jungblut assigned Plaintiff, which he consistently set at 60, indicating moderate symptoms. However, the ALJ specifically noted that GAF scores were of limited use and only assigned "some" weight to them. Moreover, "[a]lthough GAF scores have 'fallen somewhat into disfavor,' as the American Psychiatric Association abandoned the GAF scale in the most recent edition of the DSM ('DSM-V'), they remain medical evidence that an ALJ must consider." *Nixon v. Colvin*, 190 F. Supp. 3d 444, 447 (E.D. Pa. 2016).

For the reasons set forth above, this matter is remanded to the ALJ for further proceedings consistent with this Opinion.

Dated: January 31, 2020                                      /s/ Freda L. Wolfson
                                                             Hon. Freda L. Wolfson
                                                             United States Chief District Judge